# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| CHRIS L. McPETERS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 4:17-CV-41-TLS |
| NANCY A. BERRYHILL, acting Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff, Chris L. McPeters, seeks review of an unfavorable decision by the Commissioner of the Social Security Administration denying his application for Social Security Disability Insurance Benefits. The Plaintiff argues that the Commissioner wrongfully denied his application and erred by failing to properly weigh the medical opinion evidence, failing to properly evaluate the Plaintiff's credibility, and relying on a flawed hypothetical question to the vocation expert (VE).

## BACKGROUND

On March 12, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 11, 2012. (R. at 21.) The Plaintiff's application was denied initially and upon reconsideration. On August 6, 2015, an administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on August 19, 2015, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled from his alleged onset date of January 11, 2012, through the date last insured of June 30, 2014. On March 17, 2017, the Appeals Council denied the Plaintiff's request to review

the ALJ's decision. The ALJ's decision therefore became the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g).

The Plaintiff was born on August 6, 1964. (R. at 32.) The Plaintiff previously worked as a production assembler, machine feeder, and a conveyor feeder off bearer. (R. at 31.) In this case, the Plaintiff claimed to have become disabled on January 11, 2012. (R. at 220.) The Plaintiff claims to be disabled due to the severe impairments of arthritis, fibromyalgia, and depression. (R. at 23.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520(a). The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). 20 C.F.R. 404.1520(b). In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the alleged onset date of disability, January 11, 2012, through his last date insured of June 30, 2014, and thus, the Plaintiff satisfied the step one inquiry. (R. at 23.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's arthritis, fibromyalgia, and depression were severe impairments because they significantly limited his ability to perform basic work activities. (R. at 23.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, he earns a presumption of disability "without considering his age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things [he] can still do physically, despite [his] limitations—to determine whether [he] can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to:

> lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 4 hours in an 8-hour workday, and sit about 4 hours in an 8-hour workday with normal breaks. The claimant was to never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, and could frequently balance. The claimant was unable to push or pull, but was capable of frequent grasping, fingering, feeling, and reaching. After standing 1 hour, the claimant would need to alternate positions for 5 minutes, while remaining on task. The claimant was limited to simple, routine tasks (20 C.F.R. 404.1567(b)).

(R. at 25.)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 27.) In making the credibility assessment, the ALJ found that the Plaintiff's "own statements undermine his subjective allegations of disability." (R. at 30.) The ALJ cited the Plaintiff's admission that "he walked on the treadmill almost daily and for distances of up to 1mile at a time" and that he mowed the lawn on a riding mower and worked on his car with a wrench for extended periods of time. (R. at 31.)

The ALJ addressed the opinion evidence of the Plaintiff's treating physician Dr. Hugenberg (a rheumatologist the Plaintiff had seen since March 2012), and Mr. Wangerin (a physician's assistant who was the Plaintiff's primary care medical provider since March 2012), giving the opinions of both only "moderate weight." (R. at 27–30.) Dr. Hugenberg opined that "although [the Plaintiff's] arthritis is controlled, the headaches and fibromyalgia are very severe and significantly impair his function and ability to work any job demanding physical activity." (R. at 28, 339.) In contrast, the ALJ assigned "great weight" to the State agency medical consultants, Dr. Eskonen and Dr. Sands, who both felt the Plaintiff could engage in light exertional work with a few postural reductions. (R. at 31.)

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform his past work and, if necessary, whether the claimant could perform other work in the economy. 20 C.F.R. § 416.920(g). At this initial step of the evaluation, the ALJ determined that the Plaintiff could not perform his past work, but in light of his age, education, work experience,

and RFC, that he could perform other jobs that existed in significant numbers in the national economy. (R. at 31–32.) Specifically, the Vocational Expert (VE) testified at the hearing that he could work as an office helper, mail clerk, and as a routing clerk. (R. at 32.)

## STANDARD OF REVIEW

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must

explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff claims that the ALJ committed several errors: first, the ALJ failed to properly weigh the medical opinion evidence; second, the ALJ failed to properly evaluate the Plaintiff's credibility; and third, the ALJ relied on a flawed hypothetical question to the vocational expert (VE).

### A. Credibility

The Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *Elder*, 529 F.3d at 413–14. "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence

6

and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

Social Security Ruling 12–2p, which provides guidance on evaluating fibromyalgia in disability claims, describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12–2p, 2012 WL 3017612, at *6 (July 25, 2012). "[T]he symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. As the Sixth Circuit has noted, "given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

In this case, the Court finds that the ALJ's credibility assessment is not supported by substantial evidence because the ALJ erroneously relied on the Plaintiff's description of his daily activities, including walking on the treadmill, in discounting his credibility. The ALJ found:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. . . . The claimant's own statements undermine his subjective allegations of disability. He admitted to his primary rheumatologist that he walked on the treadmill almost daily and for distances of up to 1 mile at a time. In contrast, he testified that he cannot walk very far, would need to sit after only a very short distance, and experienced significant pain and swelling, complaints of which are not present in the treatment notes. He also admitted to mowing the lawn on a riding mower and working on his car for extended periods, using a wrench, with residual pain the following day. He admits to improvement on medication, and only morning stiffness of a few hours. The undersigned finds the claimant's

7

> subjective allegations of disability less than fully credible for those
> reasons mentioned here and throughout this decision.

(R. at 30–31.)

The ALJ herself noted in the hearing that "[s]ometimes people - - when people have fibromyalgia, doctors might recommend physical activity." (R. at 64.) She asked whether the Plaintiff had tried that, and what the result was. (*Id.*) The Plaintiff answered: "I do, I do walk on a treadmill for maybe 10 minutes, 15 and then I start having pain in my upper thigh area. Upper thigh area into my hips and then I don't do it no more. I do it like every other day. I will. I try to move because I know if I just sit around and do nothing that I'm only going to be worse is what he told me, and he said to do what I can do and it will help me in the long run with the pain." (R. at 64.) Thus, the Plaintiff was forthright in the hearing and did state that he walked on the treadmill.

The Plaintiff's walking on a treadmill is documented in several places in the medical record. Dr. Hugenberg first noted in a report dated March 5, 2012, that the Plaintiff reported walking 1/3 a mile every other day, but it took him 20–30 minutes to do so. (R. at 341.) When asked if he could do more, or quicker, the Plaintiff responded that if he walks for even short periods of time, he develops burning in his anterior thighs. (*Id.*) This medical note is consistent with the Plaintiff's testimony at the hearing. On May 9, 2013, Dr. Hugenberg noted in his progress notes that the Plaintiff is "limited to how long he can stand and walk because of pain." (R. at 421.) Dr. Hugenberg noted that the Plaintiff was walking on a treadmill about 3 times a week, but for just half a mile. (*Id.*) Dr. Hugenberg then "encouraged him to continue the exercise" and said "he should try to get a walk for a little bit longer on a treadmill when he does it 3 days a week." (R. at 422.) However, by July 19, 2013, Dr. Hugenberg recognized that the

8

Plaintiff was not doing regular aerobic exercise, and he gave him a copy of a brochure entitled "Why Fitness Matters." (R. at 414–15.) On March 9, 2015, Dr. Hugenberg noted that the Plaintiff was walking ½ mile to 1 mile every day on the treadmill (R. at 520), and this is the treadmill use that the ALJ cites in her opinion (R. at 30).[1] Yet by July 10, 2015, Dr. Hugenberg stated in his progress notes that the Plaintiff was now walking on a treadmill for about 20 minutes 3 days a week and "the problem is the next day" he has swelling and pain when he "walks for a long period of time." (R. at 515.)

As the Court in *Rogers* noted, "the fact that a patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms." *Rogers*, 486 F.3d at 249. That is exactly what happened in this case. Dr. Hugenberg encouraged the Plaintiff to walk more, presumably to help the stiffness and pain associated with his fibromyalgia. (R. at 422.) But the Plaintiff specifically testified, consistent with evidence in the medical notes, that walking extended distances on the treadmill caused the Plaintiff pain in his thighs, and caused him pain and swelling the next day. (R. at 64, 341, 515.) As this Court recently found, "[c]ourts have repeatedly found fault with decisions where the ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities . . . ." *Laymon v. Berryhill*, No. 1:17-CV-457-TLS, 2018 WL 4090980, at *5 (N.D. Ind. Aug. 28, 2018 ) (citations omitted). Here, the ALJ should have considered the physical consequences of the Plaintiff walking on the treadmill, as well as

---

[1]This seems to be the longest treadmill use by the Plaintiff recorded in the medical records. As mentioned in this section, there are reports of him walking less on the treadmill. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quotation omitted).

explain how he concluded that the Plaintiff's use of the treadmill, as recommended by his doctor, affected his credibility.

The ALJ's finding that the Plaintiff was "less than fully credible" because he worked on his car for extended periods, using a wrench, is also faulty. (R. at 31.) Dr. Hugenberg noted in a report dated July 10, 2015, that "he can go out in the garage and work on his car and use a wrench for quite a long time, but the problem is the next day, he has swelling and pain in his hands and hurts all over and cannot do anything for the rest of the day." (R. at 515.) While the ALJ mentioned in her opinion that the Plaintiff has "residual pain the next day," the ALJ did not properly consider the residual effects and pain caused by some of the daily living activities the Plaintiff manages to accomplish. Regarding mowing the lawn, which the ALJ noted in her opinion, the Plaintiff testified that he used a riding mower, that it hurt his hips, and he would "usually have my kids do it." (R. at 53.) As the Seventh Circuit has stated, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer." *Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013) (quotation and citations omitted).

As such, the ALJ should not have used Plaintiff's walking on a treadmill at the suggestion of his physician, and his daily activities of occasionally working on the car with his wrench and using a riding lawnmower, but experiencing pain as a result of these activities, as a reason to find his testimony not credible. *See Herrold v. Colvin*, No. 2:13-cv-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal

hygiene, children, or household chores."). Because the dismissal of the Plaintiff's credibility based upon his daily activities and walking on the treadmill is not supported by substantial evidence, remand is appropriate. The ALJ should reevaluate Plaintiff's testimony and complaints on remand.

B.  **Medical Opinion Evidence**

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence, *see id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" her reasons. *Berger*, 516 F.3d at 545 (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

In this case, the ALJ gave the opinions of the Plaintiff's physician Dr. Hugenberg and physician assistant Wangerin "moderate weight." (R. at 28, 29.) Because this case is being

11

remanded on the credibility issue, this Court need not directly determine whether the opinions were entitled to controlling weight. However, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision which "said nothing regarding this required checklist of factors"); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence.").

The ALJ did not properly consider the relevant factors in this case. The ALJ fails to discuss the length and frequency of treatment by Dr. Hugenberg. Additionally, the ALJ did not consider the nature of the treatment, and that Dr. Hugenberg specialized in rheumatology. Moreover, there is evidence in the record, including examinations during the relevant time period, that support Dr. Hugenberg's opinions (R. at 339, 342, 394, 462, 527, 529). On remand, the ALJ should make sure to address the various factors in assessing Dr. Hugenberg's opinions.

The Commissioner points out that physician assistant Mr. Wangerin was not an acceptable medical source. (*See Def.'s Resp. Brief*, ECF No. 11, at 6.) However, the ALJ is reminded on remand that:

> With the growth of managed health care in recent years and the emphasis on containing costs, medical sources who are not "acceptable medical sources" such as . . . physician assistants . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians . . .

. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006).[2] While a physician assistant's opinion does not command controlling weight, SSR 06–03p provides factors to help an ALJ properly analyze what weight, if any, it does deserve. Specifically, an ALJ should consider the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. SSR 06–03p.

Although the ALJ mentions in passing that the Plaintiff's visits to PA Wangerin were "few and far between" (R. at 28), she does not discuss each of the factors for this treating source. Because this case is being remanded on other grounds, on remand, the ALJ should explicitly state how each of the factors relates to her evaluation of treating source PA Wangerin.

**C.    Hypothetical**

The Plaintiff also argues that the ALJ failed to present a hypothetical question to the Vocational Expert (VE) that accurately described all of the Plaintiff's mental limitations. Specifically, the Plaintiff asserts that the hypothetical presented to the VE did not describe mental limitations to address the ALJ's finding that the Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. (R. at 24.) However, the ALJ did address the

---

[2] While the Act was amended effective March 27, 2017, to include licensed physician assistants as acceptable medical sources, the amendment is inapplicable to the Plaintiff's claims because it only applies to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502.

Plaintiff's medications treating his symptoms of pain, his ability to perform calculation at an average level, and his consultative psychological exam. (R. at 26–27, 29, 365.) This issue need not be directly decided upon by this Court since this matter requires remand on the issue of credibility. However, the ALJ is cautioned to ensure a proper hypothetical on remand, with the understanding that any change in the RFC will necessarily impact the hypothetical posed to the VE.

## CONCLUSION

For the reasons stated above the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on October 18, 2018.

                                              s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT